FILED
IN CLERK'S OFFICE
U.S. D[ISTRICT COUR]T E.D.N.Y.
★ MAY    2005 ★
                 P.M.
TIME A.M.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
RAYMOND POLANCO,

                 Petitioner,                       00 CV 0190 (SJ)

       -against-                                 MEMORANDUM
                                                      AND ORDER

UNITED STATES,

                 Respondent.
-----------------------------------------------------------X
APPEARANCES:

LIPSITZ, GREEN, FAHRINGER, ROLL,
SALISBURY & CAMBRIA, LLP
780 Third Avenue, 32nd Floor
New York, NY 10017
By:    Herald Price Fahringer
Attorney for Petitioner

UNITED STATES ATTORNEYS OFFICE
One Pierrepont Plaza
Brooklyn, NY 11201
By:    Paul Terry Weinstein
Attorney for Respondent


JOHNSON, Senior District Judge:

       Presently before the Court is a Motion by Petitioner Raymond Polanco ("Petitioner") to vacate, set aside, or correct his sentence, or for a hearing before this Court, pursuant to 28 U.S.C. § 2255. For the reasons stated herein, Petitioner's Motion for relief is DENIED.

1

Petitioner has asserted the following bases for relief: 1) trial counsel was ineffective in that he allegedly denied Petitioner the right to testify on his own behalf at trial; 2) scientific testing of evidence by the Federal Bureau of Investigation ("F.B.I.") may have been tainted, due to "substantial corruption and malfeasance" in the F.B.I.; 3) the government's alleged failure to disclose that certain witnesses may have been confidential informants deprived Petitioner of due process and the right to confront witnesses against him; and 4) "various other bases which warrant the granting of a new trial." (Mem. Law. Supp. § 2255 Pet.)[1]

## BACKGROUND

Petitioner was convicted after trial of racketeering in violation of 18 U.S.C. § 1962(c); murder and attempted murder in aid of racketeering (in connection to his involvement in the "Red Top Crew") in violation of 18 U.S.C. § 1959(a); use of a machine gun during one of the murders in violation of 18 U.S.C. § 924(c); conspiracy to distribute cocaine base in violation of 21 U.S.C. §§ 846, 841(b)(1)(A); operating a continuing criminal enterprise ("CCE") in violation of 21 U.S.C. §§ 848(a), 848(c); and distribution of crack cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C).

---

[1] For reasons that are unclear to the Court, Petitioner's Motion Under 28 U.S.C. § 2255 lists six grounds for relief, while Petitioner's Memorandum of Law in support of that Motion only includes four points, and there appears to be no relationship between the ordering of the grounds listed in the Motion and the ordering of the points listed in the Memorandum of Law (for example, ground six in the Motion is point one in the Memorandum). (See Mot. Under 28 U.S.C. § 2255 at 5–6; Mem. Law Supp. § 2255 Mot.) Additionally, the claims referenced in grounds one, two, and four in the Motion are described in terms too general for the Court to identify their substance. For all these reasons, the Court is forced to assume that Petitioner is seeking relief only on the grounds identified in the Memorandum of Law.

P-049

Petitioner was sentenced to five consecutive life terms of life imprisonment plus 120 years. United States v. Polanco, 145 F.3d 536 (2d Cir. 1998).

On appeal, the Second Circuit reversed the convictions for murder in aid of racketeering in violation of 18 U.S.C. § 1959(a) and use of a machine gun during the murder in violation of 18 U.S.C. § 924(c), based on the finding that there was insufficient evidence to demonstrate that Petitioner committed the murder for the purpose of increasing or maintaining his position in the Red Top Crew. Id. at 539–540. The Second Circuit also vacated Petitioner's conviction for conspiracy to distribute cocaine base in violation of 21 U.S.C. §§ 846, 841(b)(1)(A), finding that a conviction on both that charge and the charge of operating a CCE violated the Double Jeopardy Clause of the Fifth Amendment, since the alleged CCE was the same enterprise as the conspiracy. Id. at 541. The Second Circuit sustained Petitioner's convictions on the other charges, including murder and attempted murder. See id.

## DISCUSSION

*I.  Ineffective Assistance of Counsel*

In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court established a two-part test to determine whether an attorney's assistance was ineffective. First, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness . . . . under prevailing professional norms." Id. at 688. In order to satisfy the first prong of Strickland, Petitioner must overcome the strong presumption that the challenged action or inaction may be considered reasonable trial

3

strategy. Id. at 689. Second, a petitioner must show that counsel's performance prejudiced his defense. Id. at 689. To show prejudice, a petitioner must demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the outcome of the proceeding would have been different. Id. at 694.

Petitioner's ineffective assistance claim is premised on the argument that his trial attorney prevented him from testifying in his own defense at trial. Petitioner states that "when he indicated to his attorney that he wanted to testify at trial, defense counsel stated, in sum or substance, that counsel would walk out of the case — leaving [Petitioner] with no alternative but to forego his constitutional right to testify." (Mem. Law Supp. § 2255 Pet. at 11.)

Petitioner is of course correct that a criminal defendant has a right to testify in his own defense and that a lawyer who actually bars a defendant from doing so may be found ineffective. Brown v. Artuz, 124 F.3d 73, 79–80 (2d Cir. 1997). However, Petitioner's submissions focus almost exclusively on the *legal* basis of his claim regarding a defendant's right to testify — a point which is not actually in dispute. (See Mem. Law Opp'n § 2255 Mot. at 9 (acknowledging that a defendant has a right to take the stand in his own defense and that an ineffectiveness claim may be premised on a lawyer's failure to permit him to do so).) What Petitioner's submissions fail to sufficiently address is the *factual* basis of his claim. Petitioner has not submitted a sworn affidavit stating that he wished to testify at trial, nor has he provided the Court with any indication of what the substance of his testimony would have been.

4

As Petitioner appears to recognize (see Repl. Mem. Law at 7), Petitioner's failure to supply an affidavit or give any description of his proposed testimony distinguishes his case from others in which a hearing or other relief was granted. E.g. Rega v. United States, 2000 WL 356403 (S.D.N.Y. Apr. 6, 2000);[2] Glick v. United States, 1998 WL 315065 (E.D.N.Y. June 11, 1998). As other courts have noted, "without more, a [petitioner's] 'barebones assertion' that his attorney told him not to testify in his own defense, even if that assertion is made under oath, has been held to be insufficient to justify a hearing or other action on a petitioner's claim that his right to testify in his own defense was denied him." Scire v. United States, 1997 WL 138991, *11 (E.D.N.Y. Mar. 24, 1997) (citing Underwood v. Clark, 939 F.2d 473, 476 (7th Cir. 1991)); see also Acevedo v. Demskie, 1999 WL 325055 (E.D.N.Y. May 11, 1999); Millian v. United States, 1997 WL 793113 (E.D.N.Y. Nov. 18, 1997).

Counsel states that Petitioner was unable to supply an affidavit or further information regarding his proposed testimony because of communication difficulties due to Petitioner's transfer between facilities and lack of access to mail. (Repl. Mem. Law. at 7–9.) The Court notes, however, that by the time that Petitioner's counsel submitted the Reply Memorandum of Law, in which he stated that he was unable to further detail Petitioner's ineffectiveness claim without continued communication with Petitioner, he

---

[2.] The lower court decision in Rega was reversed by the Second Circuit after Petitioner's Motion was filed. Rega v. United States, 263 F.3d 18 (2d Cir. 2001).

5

had been representing Petitioner for over two years.[3] During this time, apart from representing Petitioner on appeal, he had managed to file a Motion for § 2255 relief, a Memorandum of Law in support of that Motion, a Declaration in support of the Motion, and a Reply Memorandum of Law in further support of the Motion. Accordingly, it is not clear why counsel would be unable to describe the basic substance of Petitioner's ineffectiveness claim at such a late date in the proceedings.[4] Petitioner has not cited any case law to support the proposition that this Court should excuse Petitioner's failure to provide an affidavit or any description of the proposed testimony.

Finally, not only does Petitioner "not allude to any evidence that might substantiate his claim that his counsel denied him the right to testify in his own defense", instead "merely stat[ing] his claim in his Memorandum of Law, failing to provide even his own sworn statement to support his allegation," Scire, 1997 WL 138991 at *11, Petitioner's assertions are contradicted by the representations in his trial attorney's sworn affidavit.[5] The Court finds that Petitioner has not demonstrated that counsel's

---

[3]. Petitioner's counsel, Harold Price Fahringer, represented Petitioner during his appeal to the Second Circuit, which was argued March 9, 1998, and filed the Reply Memorandum of Law on June 30, 2000.

[4]. Counsel was also granted two extensions in the time to file his Reply Memorandum of Law. (Endorsed Order on Letter from Harold Price Fahringer to the Court, Apr. 24, 2000; Endorsed Order on Letter from Harold Price Fahringer to the Court, May 19, 2000.) Counsel did not attempt to obtain a third extension. The Court also notes that Petitioner has sent numerous letters to the Court, but has made no attempt in these letters to outline his proposed testimony. (See Letter from Petitioner to the Court, Mar. 4, 2003; Letter from Petitioner to the Court, Mar. 12, 2003; Letter from Petitioner to the Court, Mar. 23, 2003; Letter from Petitioner to the Court, Mar. 26, 2003; Letter from Petitioner to the Court, Jun. 5, 2003.)

[5]. Petitioner's trial counsel states that:
    2. During the trial the question of whether or not Polanco should take the stand was the subject of many discussions among Polanco, co-counsel James Moriarity and myself.

6

P-049

performance was deficient, as required for a finding of ineffectiveness under Strickland. 466 U.S. at 688. Petitioner's claim is therefore denied.

*II.   Alleged Errors in F.B.I. Testing of Evidence*

Petitioner states that after the verdict was rendered in his case, "it [was] revealed by a Justice Department report that the Federal Bureau of Investigation's crime laboratories have provided flawed evidence in some major cases. . . . Furthermore, F.B.I. officials have recently admitted that several hundred cases are currently being reviewed for exculpatory evidence that would help defendants win new trials or overturn convictions." (Mem. Law Supp. § 2255 Pet. at 14.) Petitioner has presented absolutely no evidence that his case was one of the cases in which flawed evidence was provided by the F.B.I.

The Court cannot grant any relief at this time based on the entirely hypothetical supposition that flawed evidence was presented in Petitioner's case. If Petitioner does at

---

Both counsel, Moriarity and myself strongly advised Polanco that in our opinion he should not take the stand.
3. Polanco apparently discussed our advice with members of his family who it was related to me strongly supported our advice. I was advised that one or more of them may have told Polanco that I would walk off the case if he decided to take the stand. This information and threat did not come from Moriarity or me, and we immediately took steps to correct it.
4. We visited Polanco for several hours (I believe on a Sunday) explaining in detail that although it was our strong advice that he not take the stand it was his absolute constitutional right to do so if he chose. We also advised him that there was no truth to the statement that if he did so we or I would walk off his case. I opined that this was just their (his family's) attempt at convincing him to not [sic] take the stand but that it was his choice alone. If he chose to take the stand against our advice that was his right and we would continue to defend him to the best of our ability. He was advised that [sic] was the law.
(Aff. of Gerald J. Di Chiara, Aug. 7, 2003, ¶¶ 2–4.)

7

some point obtain any actual evidence in support of his claim, he may file a successive habeas petition based on newly discovered evidence. See 28 U.S.C. § 2255.

The Court also finds that it is unnecessary to grant an order of discovery since, as Petitioner himself has acknowledged, the F.B.I. is already searching for exculpatory evidence that would help defendants win new trials or overturn convictions, evidently planning to notify the individuals whose cases are affected. (Id.) Additionally, it is not clear how an order of discovery would be of any use to Petitioner considering the extremely limited role of F.B.I. evidence in the case. Petitioner's claims are therefore denied.

*III.  Confidential Informants*

Petitioner asserts that since his trial, he "subsequently learned that several of the witnesses who testified on behalf of the government and against him at trial may well have been confidential informants prior to the period discussed at trial." (Mem. Law Supp. § 2255 Mot. at 17.) Despite Petitioner's suggestion that "several" witnesses were secretly confidential informants at an earlier date, the Court must construe his argument as a claim regarding exactly one witness, Michael Rivera, because Michael Rivera is the only witness that Petitioner has actually identified in relation to this claim. (Id. at 17; Repl. Mem. Law at 4–7.)[6]

Again, Petitioner has completely failed to supply the Court with any factual

---

[6] Petitioner fails to explain how it is that he learned that "several witnesses" were confidential informants without learning who these witnesses were.

8

support for his claim. Petitioner neither explains how or when he allegedly learned that Rivera was a confidential informant, nor produces any evidence to verify this claim. Petitioner appears, rather, to concede the lack of evidence that Rivera was a confidential informant before the date given during trial testimony, in that Petitioner states all his claims on this point in a conditional manner:

> *If* Michael Rivera had, in fact, been working for the government prior to the time indicated at trial then the prosecution *may well* have suborned perjury by failing to disclose this critical information. Furthermore, the defense *would* have been deprived of the opportunity to discredit and impeach Rivera with this dynamic proof.

(Mem. Law Supp. § 2255 Mot. at 17 (emphasis added).)[7]

In this claim, as in his others, Petitioner's counsel appears to misunderstand the basic nature of habeas relief. Having already met its burden of proving Petitioner's guilt at trial, and having prevailed again on direct appeal, the government is not, at this stage, responsible for proving its case against Petitioner yet again in response to any and every vague and unsubstantiated claim that Petitioner decides to set forth. Rather, on a motion to vacate a sentence, the petitioner has the burden of showing that he is entitled to relief. E.g. United States v. Purdy, 245 F.Supp.2d 411, 414 (D.Conn. 1999) (citing 28 U.S.C. § 2255.) "A collateral attack on a criminal conviction must overcome the threshold hurdle that the challenged judgment carries with it a presumption of regularity." Williams v. United States, 481 F.2d 339, 346 (2d Cir. 1973). In other words, Petitioner cannot shift

---

[7.] Petitioner's strongest statement on this point is that he "now has reason to believe that [Rivera] was, in fact, a confidential informant substantially earlier than disclosed at trial." (Id.) However, Petitioner at no point explains what the "reason to believe" is.

9

P-049

the burden of demonstrating his guilt back to the Government simply by asserting legal arguments and demanding that the Government come forward with evidence. Accordingly, Petitioner's claim is denied.

## VI. "Various Other Bases" for Relief

The additional claims asserted by Petitioner consist of unsupported assertions that: Petitioner wished to testify before the Grand Jury but was not permitted to do so, that I should have recused myself from the case due to my work as a Special Narcotics Prosecutor, that Petitioner should be resentenced due to the Second Circuit's voiding of certain of Petitioner's convictions, and that until Petitioner is resentenced his sentence is in violation of the Double Jeopardy Clause. (Mem. Law Supp. § 2255 Mot. at 25–29.) These claims, like the others, are vague and lacking in any attempt at evidentiary support. Additionally, with the exception of the recusal argument, none of these claims are supported by a single reference to relevant case law or statutes. Accordingly, the Court finds that Petitioner has wholly failed to meet his burden of demonstrating that he is entitled to relief. See Purdy, 245 F.Supp.2d at 414.

Furthermore, the Court finds that the claims are procedurally barred due to Petitioner's failure to raise the claims at trial or on direct appeal.[8] A petitioner who raises claims that could have been raised at trial or on appeal, but were not raised, must demonstrate "cause" and "prejudice" for the failure to raise the claims earlier. Bousley

---

[9.] The Court finds that the Grand Jury and recusal arguments could have been raised at trial or on appeal, and the resentencing and double jeopardy arguments could have been presented to the Second Circuit on appeal.

10

v. United States, 523 U.S. 614, 622–23 (1998). Petitioner has made no attempt to make either showing, and thus the claims must be denied.

**CONCLUSION**

For the reasons stated herein, Petitioner's Motion for Relief pursuant to 28 U.S.C. § 2255 is DENIED. For a certificate of appealability to issue, petitioner must make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A substantial showing "does not require a petitioner to demonstrate that he would prevail on the merits, but merely that 'reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.'" Santana v. United States, 2005 WL 180932, at *7 (S.D.N.Y. Jan. 26, 2005) (quoting Rhagi v. Artuz, 309 F.3d 103, 106 (2d Cir. 2002)) (internal quotation marks and citation omitted).

Where a petition is dismissed on procedural grounds, the petitioner seeking a certificate of appealability must show that both the procedural and underlying constitutional issues are reasonably debatable. Sosa v. U.S., 2003 WL 22218505, *1 (S.D.N.Y. Sept. 25, 2003). Petitioner has made no substantial showing of the denial of a constitutional right in this case, nor any showing that the procedural issues are debatable. Accordingly, this Court denies a certificate of appealability.

The Clerk of Court is directed to enter a final judgment of dismissal and to close the case.

11

SO ORDERED.

Dated: May 12, 2005
      Brooklyn, New York

s/SJ
_____
Senior U.S.D.J.

P-049